# EXHIBIT 9

Ex. 9-001



**Food and Nutrition Service**

U.S. DEPARTMENT OF AGRICULTURE

December 23, 2025

Governor Josh Shapiro
501 North 3rd Street
Main Capitol Building
Harrisburg, Pennsylvania 17120

Dear Governor Shapiro,

This replies to your December 8, 2025 letter responding to the U.S. Department of Agriculture (USDA), Food and Nutrition Service (FNS)'s November 24, 2025 request to produce data related to the Supplemental Nutrition Assistance Program (SNAP). That request asked your State to share data to assist FNS in its statutorily-mandated administration and enforcement of the Food and Nutrition Act of 2008, as amended, (SNAP Act), including providing administrative funding to State Agencies to collect such information.

Your State, along with 20 others and the District of Columbia, responded through their lawyers by submitting a single, formulaic response objecting to our direction that you share with FNS SNAP data (December 8 Letter). The December 8 Letter seeks further delay, questioning FNS's need for, and right to obtain data necessary to audit the States' administration and enforcement of SNAP. USDA addresses each of your concerns in greater depth below. But, on the whole, your December 8 Letter provided no basis for your continued withholding of data because:

- FNS requires—and is statutorily entitled to—the SNAP eligibility and payment data that the States collect, with the aid of Federal funding, to administer SNAP benefits, which are funded entirely by FNS.

- FNS has offered to observe data and security protocols *more stringent* than any requested or observed by States historically in providing *the exact same type of data* to FNS. There is no material difference between the States uploading to FNS a sample set of names, DOBs, addresses, SSNs and other data elements for Quality Control (QC) and uploading the same data elements pursuant to FNS's request here for a complete set of the same data elements. None of your December 8 letter's objections and questions justified your State's refusal to accept FNS's offered protocols or to provide edits that you propose to accept those protocols.

**1. FNS requires the data it requested to verify compliance with the SNAP Act.** First, States may not undermine FNS's clear authority to determine what data FNS needs to complete its statutorily mandated role in overseeing SNAP. It is clear to all concerned that through undetected errors and fraud, Federal SNAP funds are being wasted and stolen. Indeed, on December 11, California's own State Auditor found its State's SNAP agency exposes taxpayers to "high-risk" after observing the financial consequences of widespread errors in the State's administration of SNAP. *See* https://www.auditor.ca.gov/reports/2025-601/. While California withholds SNAP data from the Federal Government, it gives that same data to State employees

who can access and abuse the data apparently without appropriate safeguards against internal abuse.  *See* https://www.justice.gov/usao-edca/pr/former-madera-county-welfare-benefits-employee-arrested-improperly-using-other-peoples.  Noncomplying States' failures to administer SNAP have become notorious nationwide.  *E.g.,* https://nypost.com/2025/12/16/us-news/calif-welfare-worker-stole-40k-in-benefits-using-identities-of-elderly-dead-people-feds/.

Data received from the 28 States that complied with USDA's request indicate that an estimated average of $24 million per day of SNAP funds are being erroneously spent or lost to fraud. Examples of fraud indicators included allowing hundreds of thousands of deceased and other ineligible people to remain on State SNAP benefit rolls.  Although the non-complying minority of States may dismiss the significance of their allowing dead or otherwise ineligible people to remain on SNAP rolls, failures to detect and correct errors and fraud make it important that they promptly join the cooperating states by complying with FNS's data request.  In the meantime, errors and fraud proliferate in the non-complying States.  *E.g.,* https://kstp.com/kstp-news/top-news/minnesota-repeatedly-reported-inaccurate-data-on-snap-to-the-federal-government/; https://www.justice.gov/usao-or/pr/romanian-nationals-unlawfully-residing-united-states-indicted-conspiring-steal-snap.

Each of the data elements FNS requested ensures that the various programmatic requirements, including eligibility requirements, are being met by households and are properly implemented and enforced by the States. The requested data elements can help confirm the accuracy of eligibility and benefit level determinations as well as aid in the investigation of SNAP benefit trafficking and theft, including EBT card skimming. Longitudinal data is required to detect patterns and trends that will inform SNAP administration, in addition to verifying the accuracy and reliability of the data submitted in response to this request.

**2. FNS's request is for records that Congress mandated "shall be made available" to USDA.**  As we outlined in our November 24 letter, FNS is statutorily entitled to the data we request.  *See* 7 U.S.C. § 2020(a)(3)(B) (requiring that "such records as may be necessary to determine whether the program is being conducted in compliance with this [SNAP Act] (including regulations issued under this [SNAP Act])" "shall be made available" for inspection and audit by USDA).  In their December 8 response, the non-complying States wrongly suggested that USDA agrees that States need not produce the requested data unless and before States agree to data and security protocols.  Although this statute permits the Secretary and State agency to agree that an inspection and audit be "subject to data and security protocols agreed to by the State agency and Secretary" it does not make such agreement a condition, let alone a condition precedent, to Congress' requirement that States' records "shall—. . . be made available" to USDA.  Textually, Section (a)(3) merely provides that FNS's access will be subject to any protocols that the Secretary agrees with the State agency to observe.  Congress did not, however, permit States to render the Federal audit statute meaningless by refusing to agree with the Secretary about a protocol, or otherwise attempting to dictate the terms upon which their expenditures of Federal funds shall be inspected or audited.

**3. FNS has offered to observe data and security protocols more stringent than any requested or observed by States historically in providing the exact same type of data to FNS.**  Although not required by law, in the interest of comity FNS offered to observe a set of data and security protocols that are far more stringent than any that have been requested or

Ex. 9-003

observed by States when they share SNAP data with FNS.  Indeed, the States, including yours, routinely upload to FNS the same type of data we now request.  Your State's response rebuffed FNS's offer to provide specific edits or suggestions to the protocols; your State's response instead sent back questions (and often accusations) about FNS's purported intent.  FNS has addressed each question below and offered to make accommodations where appropriate.  But this does not change the fact that FNS has offered specific, concrete proposals, whereas the States have declined to do the same.

As illustrated by the following chart: (1) there is no material difference between the *type* of data your State routinely uploads to FNS for QC purposes, and the data elements FNS requested on November 24, and (2) FNS's data request only calls for a small portion of the categories that States normally submit to FNS for QC purposes:

### Data Element Comparisons

This chart identifies the required data elements submitted by State agencies to the U.S. Department of Agriculture (USDA) for Quality Control (QC) purposes.  States submit a sample set of this data to USDA monthly.  Fields identified with a * symbol have been requested by USDA for the Supplemental Nutrition Assistance Program (SNAP) Data Sharing integrity initiative.  As indicated by this chart, there is no difference between the data elements requested by USDA on November 24, 2025 and the corresponding data elements submitted by States to USDA for QC purposes, other than to request a complete set, rather than a sample set, of the same type of data.

| | | |
|---|---|---|
| Case Number* | Case Address* | Phone Number* |
| SNAP Household Names* | SNAP Household DOBs* | SNAP Household SSN* |
| SNAP Household Relationships* | Citizen/Non-Citizen Status * | Homeless Status* |
| All Household Earned Income* | All Household Unearned Income* | All Household Self-Employment Income* |
| Authorized Representative* | Indicator if SNAP Household Member is active* | Reporting Status* |
| Recipient Disqualification* | Certification Period* | Assets/Resources* |
| Categorial Eligibility | Directions to Home | Shelter Expenses* |
| Date of Interview | Household Composition | Expedited Service |
| Most Recent Action | Student Status | Amount of Allotment |

Ex. 9-004

| | | |
|---|---|---|
| Allotment Adjustments | Demonstration Projects | Residency |
| Earned Income Deductions | Dependent Care | Shelter Deductions |
| Other Government Benefits | Contributions | Deemed Income |
| Standard Utility Allowance | Child Support Deductions | Medical Deduction |
| Income from loans, scholarships, grants | Arithmetic Computation | SNAP Simplification Project |
| Significant Persons NOT living in home phone number | Significant Persons NOT living in the home relationship | Significant Persons NOT living in the home SSNs |
| Significant Persons Not living in the DOBs | Significant Persons NOT living in the home address | Significant Persons NOT living in the home financial support |
| All data related to work requirements – E&T programs, time limited participation, work registration, etc. | States must verify all elements with supporting documentation and upload those to SNAP-QCS | |

That FNS wishes now to examine a *complete* data set, instead of the self-selected samples States collect, is no good faith basis to object. Nor is there any valid basis to object to our request that States produce longitudinal data—as this will permit us to detect whether SNAP has been administered and enforced correctly during the past five years. And the preservation and production of that longitudinal data is important to FNS's need to determine whether anomalous changes we have observed signal a need for further investigation. These preliminary findings lead FNS to conclude that it must make a more complete use of its authority to review the States' administration and enforcement of SNAP.

**4. The States' cited reasons for continuing to withhold SNAP data are baseless.**

   **a. FNS requires a complete set, not just States' samples, of the same type of data States produce monthly.** The primary basis for the States' December 8 Letter's objection—that FNS seeks data of the same type but in greater *volume* than the self-selected sampling of households States provide to FNS for QC—makes no sense. It is simply baseless to object to providing a complete set, rather than just a sample, of the data FNS seeks.

   **b. The States' objections and suggestion of alternatives reflect a lack of understanding of SNAP program integrity.**

      **i. Although states are largely not using it, the National Accuracy Clearinghouse (NAC) is a tool for states to assist each other that does not meet FNS's need to obtain data that states are withholding from FNS.** The States' December 8 Letter attempts to use the

Ex. 9-005

National Accuracy Clearinghouse (NAC) to support their withholding reflects a lack of understanding of SNAP program integrity.  As you may be aware, only four of the 22 noncomplying States have launched the NAC, an interstate data matching system designed *solely* to assist *States* to prevent duplicate participation.  The hashing of data for NAC is allowable only because each State with a legitimate need to access household PII *already has it*.  Both the "receiving" State agency and the "losing" State agency were provided the PII by the household at issue—the only information the States are lacking is whether that same household is participating or attempting to participate in another State simultaneously.  Because each State agency is already in possession of the information needed to take action on possible duplicate participation, there is no need for States to provide that information to each other un-hashed via the NAC.  As such, cryptographic hashing is appropriate.  The SNAP Information Database is clearly different. Unlike the NAC, which will eventually have 53 participating State agencies, USDA FNCS is the only entity receiving the SNAP data we have requested.

Crucially, the hashing of data is not a viable solution when only one of the entities (in this case, the State) possesses the data.  In the simplest of terms, a cryptographic hash function converts a piece of data into a specific hash value.  The hash value itself tells you nothing of the underlying piece of data, and you can only recreate the specific hash value with that function by inputting the same underlying piece of data into it.  If States were to submit the requested data in a cryptographic hash format, that would be akin to providing USDA hundreds of thousands of combination locks without any of the codes.

As such, it is not feasible for the SNAP Information Database to include "the same protections" as the NAC.

      **ii. The states have no basis to invoke the Computer Matching Act.**  The SNAP Information Database is not a matching program.  It is a database that stores the SNAP participant information submitted by State agencies.  Nor will FNS's uses of data be automatic.  Although FNS hopes to help States improve their error rates in making eligibility determinations, the States retain their responsibility and liability for making those determinations.  The SNAP Information Database will not be matched with State agency databases, and as a result, the Computer Matching Act is not implicated and a CMA is not required or appropriate.

      **iii. FNS's offer of FedRAMP High data security protocols exceed the protection accepted by States for the same type of data requested here**.  As stated in FNS's offered protocols, data is encrypted both in transit and at rest, and the requested data is protected with FedRAMP High data security, a higher level of security than that which States, including your State, historically have accepted in releasing similar data to FNS—including name, date of birth, social security number and address. FNS will inspect and audit the data provided pursuant to this request solely for the purposes of "determin[ing] whether the program is being conducted in compliance with [the Food and Nutrition Act of 2008 (FNA)] (including regulations issued under [the FNA]." See 7 U.S.C. § 2020(a)(3).

      **iv. The States' remaining miscellany of questions provided no basis to withhold data on the States' use of SNAP funds.**  The non-complying States appear to suggest that USDA halt its present efforts in favor of constructing a pilot program under 7 U.S.C. § 2026.  This appears

Ex. 9-006

to be another unjustified effort by noncomplying States to resist a *complete* review of their use of SNAP funds.

As previously explained, our November 24 data request is founded upon 7 U.S.C. § 2020(a)(3). This provision, and its purposes, is independent from USDA's pilot authority. In any event, although USDA disagrees with the noncomplying States' implication that USDA's pilot authority requires collaboration with States, as our November 24 letter demonstrated, USDA offered to agree with States on a set of protocols, even though such agreement is not a condition limiting USDA's inspection and audit authority.

Further, the States' December 8 letter appears to ask FNS to disclose any sources or methods it will use to analyze whether the States are complying with SNAP requirements. To disclose beforehand additional details to States as to what, after receiving the data, specifically is or will be analyzed, how, and when, is not possible, given that the noncomplying States are withholding the data. Further, such disclosure would be ill-advised as it would provide a roadmap on how to avoid detection of noncompliance with SNAP requirements. FNS has already observed anomalous changes in reported data since it began providing notice last summer that it would seek to obtain this data. Hence, our previous request that States preserve their data.

Moreover, USDA is not prohibited from improving upon or developing new, efficient ways to detect fraud, waste, and abuse. Simply because other mechanisms exist to detect fraud does not preclude USDA from consistently striving for better, more efficient methods of detecting waste, fraud, and abuse in SNAP.

**5. Additional clarifying answers to States' December 8 questions.** FNS has carefully reviewed your December 8 Letter's attached questions and requests for clarification. The following information should sufficiently clarify our November 24 draft protocols, permitting you to now accept those protocols:

- USDA reiterates its November 24 letter's statement that it will only use the received data in compliance with the Food and Nutrition Act of 2008, as amended.
- In the event it receives external requests for data, USDA will follow all applicable laws. This would include, but is not limited to, the Food and Nutrition Act of 2008, as amended, FOIA, and the USDA Touhy regulations.
- The SNAP Information Database is FedRAMP certified (High).
- All data provided to the SNAP Information Database is encrypted in transit and at rest.
- USDA reiterates and clarifies that its SORN revisions will not impact the data elements requested but will simply bolster the introductory language of the Routine Uses section to clarify, as expressed previously, that the enumerated routine uses are only permitted to the extent they are permitted by the Food and Nutrition Act of 2008, as amended. The revisions will also remove the reference to "foreign" governments in Routine Use 8.

For the avoidance of doubt, we have edited our November 24 protocol to more clearly reflect the above answers to your questions and requests for clarification. We look forward to your State's reply to FNS's reiterated request. We hope to receive your agreement immediately to join the 28 States plus the Territory of Guam who are complying with FNS's November 24 request. Please

Ex. 9-007

construe this letter as your Advance Notification pursuant to 7 CFR 276.4(d)(1), providing you two weeks from this letter's date above to indicate whether you agree to our November 24 request, and the protocols we have offered.

FNS appreciates your State's concluding assertion that it "has always been FNS's primary partners and leaders in SNAP program integrity." We hope that this signals a new approach of State cooperation that will provide FNS with access to the data it pays your state to collect so that FNS can properly administer and enforce the issuance of SNAP benefits paid for with Federal funding.

Sincerely,

Patrick A. Penn
Acting Administrator, Food and Nutrition Service
Deputy Under Secretary, Food, Nutrition, and Consumer Services
U.S. Department of Agriculture

Enclosure

cc:    Jacob B. Boyer, Deputy General Counsel

Ex. 9-008

**USDA**

**U.S. DEPARTMENT OF AGRICULTURE**

**Supplemental Nutrition Assistance Program (SNAP) Information Database
Fraud, Waste and Abuse Detection Protocol**

## 1. OVERVIEW

1.1. U.S. Department of Agriculture (USDA) and the Food and Nutrition Service (FNS) will use the Supplemental Nutrition Assistance Program (SNAP) recipient data to ensure the integrity of Government programs, including by verifying SNAP recipient eligibility against federally maintained databases, identifying duplicate enrollments for elimination, and performing additional eligibility and program integrity checks specified herein.

1.2. This protocol establishes a framework for State SNAP agencies to share data with the USDA/FNS for detection of fraud, waste, and abuse and program integrity purposes.

1.3. The protocol balances federal data access requirements under Executive Order 14243 and the Food and Nutrition Act of 2008 (FNA) with privacy protections, minimizes unnecessary data collection, and incorporates security standards while maintaining public trust and compliance with applicable law.

## 2. FRAMEWORK AND AUTHORITY

2.1. <u>Authority</u>

2.1.1. Executive Order 14243 (March 20, 2025): "Stopping Waste, Fraud, and Abuse by Eliminating Information Silos" directs agency heads to "take all necessary steps, to the maximum extent consistent with law," to ensure federal government has "unfettered access to comprehensive data" from state programs receiving federal funding, including data maintained in third-party databases.

2.1.2. 7 U.S.C. § 2020(a)(3) that requires that each State agency shall keep records as may be necessary to determine whether the program is being conducted in compliance with this chapter, and all records shall be made available for inspection and audit by the Secretary, subject to data and security protocols agreed to by the State agency and Secretary.

2.1.3. 7 CFR 272 stipulates use or disclosure of information obtained from SNAP applicant or recipient households shall be restricted to persons directly connected with the administration or enforcement of the provisions of the FNA or regulations, other Federal assistance programs, federally-assisted State programs providing assistance on a means-tested basis to low-income individuals, or general assistance programs which are subject to joint processing requirements.

2.2. <u>Prohibited Purposes</u>

2.2.1. USDA shall NOT use the provided data for:

- Tax administration or tax compliance

- Law enforcement investigations beyond coordination regarding SNAP fraud, or other violations relating to the FNA.

- Administration of non-SNAP federal assistance programs (*e.g.*, Medicaid, TANF, housing assistance)

- Sharing with foreign governments or international organizations

- Commercial use or transfer to private entities

Office of the Under Secretary for Food, Nutrition, and Consumer Services
1400 Independence Avenue, SW, Washington, DC 20250-9600
USDA is an Equal Opportunity Provider, Employer, and Lender

Ex. 9-009

 **U.S. DEPARTMENT OF AGRICULTURE**

2.2.2. USDA shall collect only the data elements necessary to achieve specific, legally permissible goals, such as fraud detection, duplicate enrollment prevention, and program integrity checks. The scope of data collection shall be limited by excluding sensitive PII unless directly relevant to these goals (*i.e.*, the collection of data elements spelled out in the Privacy Impact Assessment).

## 3. DATA CATEGORIES

3.1. <u>Data Definition</u>

3.1.1. All data obtained by States or their vendors in administering SNAP or that otherwise may be necessary to determine whether the program is being conducted in accordance with the FNA or regulations issued under the FNA.

3.1.2. Data derived from third-party sources (employment verification databases, financial institution records, property records) that States use for verification but are not part of applicant-reported information are excluded.

3.2. <u>Permitted Data</u>

- Information that the applicant household reported on application/recertification forms including but not limited to personally identifiable information in the form of names, dates of birth, personal addresses used, and Social Security numbers.
- Direct verifications that the State conducted to confirm applicant-reported information Records that the State maintains of SNAP applications, approvals, denials, certifications, and benefits issued.
- Household composition and income exactly as reported by the applicant (not third-party verified amounts).
- Transactional data necessary for fraud detection

## 4. LIMITED ACCESS

4.1. The SNAP Information Database is accessed and used ONLY by employees of the USDA who are:

4.1.1. Designated by the Chief of Staff at Food, Nutrition, Consumer Services (FNCS)

4.1.2. Trained in SNAP Act, Privacy Act, and this protocol

4.1.3. In compliance with all information security annual recertifications

4.2. Except to the extent required by law, no access to the SNAP Information Database may be provided to:

4.2.1. Other USDA agencies (APHIS, ERS, NASS, etc.)

4.2.2. Divisions within FNS without an explicit need-to-know

4.2.3. OIG employees, unless in direct support of a law enforcement investigation related to SNAP

fraud, waste, or abuse

4.2.4. Any other federal agency

4.2.5. Any FOIA, administrative subpoena or like external requester

Office of the Under Secretary for Food, Nutrition, and Consumer Services
1400 Independence Avenue, SW, Washington, DC 20250-9600
USDA is an Equal Opportunity Provider, Employer, and Lender

Ex. 9-010



**U.S. DEPARTMENT OF AGRICULTURE**

**5. SYSTEM OF RECORDS NOTICE (SORN) AND PRIVACY IMPACT ASSESSMENT (PIA)**

5.1. <u>SORN</u>

The applicable SORN for this protocol is USDA/FNS-15 "National Supplemental Nutrition Assistance Program (SNAP) Information Database," 90 FR 26521.

The SORN location can be found here: https://www.federalregister.gov/documents/2025/06/23/2025-11463/privacy-act-of-1974-system-of-records

5.2. <u>Privacy Impact Assessment (PIA)</u>

The applicable Privacy Impact Assessment for the SNAP Information Database can be found here: https://www.usda.gov/sites/default/files/documents/fns-snap-information-database-pia.pdf

**6. FRAUD, WASTE, AND ABUSE DETECTION FRAMEWORK**

6.1. <u>Core Fraud Detection Functions</u>

6.1.1. USDA will employ a foundational fraud, waste, and abuse verification similar to the SNAP Quality Control program that focuses on:

- identity verification

- income and eligibility verification

- immigration status

- verification against disqualified recipients

6.2. <u>Enhanced Fraud, Waste, and Abuse Detection Techniques</u>

6.2.1. In addition to the core fraud detection functions, USDA will employ additional techniques including, but not limited to:

- Intrastate and interstate duplicate detection

- Deceased individuals' detection

- Synthetic identity patterns (new SSNs with inconsistent biographical data)

- Geographic anomalies

6.2.2. New data mining techniques will be limited to identifying recipient and retailer fraud with a direct nexus to SNAP.

**7. DATA OUTPUT**

7.1. <u>States</u>

7.1.1. USDA will provide flagged data back to the State agency for review. States are encouraged to verify the accuracy of fraud detection flags and provide feedback to USDA to refine detection logic and reduce false positives. Collaborative processes will be established to ensure accurate identification of fraud and appropriate corrective actions.

7.2. <u>Law Enforcement</u>

7.2.1. The USDA may refer fraud detection leads to USDA OIG and other law enforcement agencies where a criminal nexus has been drawn specifically to SNAP.

7.3. <u>USDA SNAP Retailer Operations Center (ROC)</u>

7.3.1. The USDA may refer fraud detection leads to the ROC where, during fraud detection analysis, a compromised EBT card or terminal ID may have been identified.

Office of the Under Secretary for Food, Nutrition, and Consumer Services
1400 Independence Avenue, SW, Washington, DC 20250-9600
USDA is an Equal Opportunity Provider, Employer, and Lender

Ex. 9-011

 **U.S. DEPARTMENT OF AGRICULTURE**

## 8.   DATA MINIMIZATION AND RETENTION

8.1.  Retention Period

8.1.1.  Until a record schedule is approved, data will be retained only as long as necessary for purposes set forth in the SORN and this protocol, and in no case longer than 3 years per the SORN.

8.2.  Automatic Deletion

8.2.1.  Data shall be retained for no longer than three years, consistent with the USDA/FNS-15 SORN. An automated process will be implemented to delete data upon expiration of the retention period, except for records related to ongoing audits, investigations, or litigation.

8.3.  Ongoing Cases

8.3.1.  Data pertaining to ongoing audit, investigation, or potential litigation retained only as long as necessary, then deleted.

## 9.   DATA SECURITY AND TECHNICAL REQUIREMENTS

9.1.  Infrastructure and Location

9.1.1.  Primary storage location: AWS GovCloud (US) region

9.1.2.  Backup/disaster recovery: Secondary AWS region

9.1.3.  No storage, processing, or backup outside GovCloud or federal secure environments

9.1.4.  All infrastructure must meet or exceed FedRAMP High baseline standards

9.1.5.  AWS  Personnel Access: Data is encrypted such that AWS personnel cannot access unencrypted data. Encryption keys are managed exclusively by federal USDA personnel and are not accessible to AWS or third-party vendors.

9.2.  Access Controls

9.2.1.  Multi-factor authentication required for all access

9.2.2.  Role-based access control (RBAC) with principle of least privilege

9.2.3.  Access is limited to specifically designated USDA employees engaged to assist in determining whether the program is being conducted in accordance with the FNA.

9.2.4.  Access  logging and audit trail maintenance (minimum period equal to data retention period, see Section V.E).

9.2.5.  Quarterly access reviews by USDA

9.2.6.  Immediate revocation of access upon employee termination or assignment change

9.3.  Encryption Standards

9.3.1.  Encrypted data at rest and in transit

9.3.2.  Encryption keys managed solely by USDA federal personnel

9.3.3.  No encryption keys held by commercial vendors

9.4.  Data Segregation and Compartmentalization

9.4.1.  SNAP data isolated in separate, dedicated AWS GovCloud environment

9.4.2.  SNAP data not directly integrated with other USDA systems

9.4.3.  Limiting  access to individuals with specialized training and oversight

Office of the Under Secretary for Food, Nutrition, and Consumer Services
1400 Independence Avenue, SW, Washington, DC 20250-9600
USDA is an Equal Opportunity Provider, Employer, and Lender

Ex. 9-012



**U.S. DEPARTMENT OF AGRICULTURE**

9.5.  Data Transfer

    9.5.1.  All  data transfers shall utilize secure tools that meet or exceed FedRAMP High baseline standards.

## 10.  INCIDENT RESPONSE AND BREACH NOTIFICATION

10.1.  Incident Response

    10.1.1.  Incident response procedures are aligned with FNS Handbook Chapter 10 security incident and breach notification requirements that USDA already follows internally. This protocol extends equivalent procedures to State notification.

10.2.  Incident Definition

    10.1.2.  Unauthorized access, use, or disclosure of data

    10.1.3.  Security vulnerability or control failure affecting data

    10.1.4.  Data loss, corruption, or destruction

    10.1.5.  Encryption failure or key compromise

    10.1.6.  Failed access control or authentication mechanism

    10.1.7.  Any event that may reasonably be expected to compromise data security or confidentiality

10.3.  Incident Notification Timeline

    10.3.1.  Initial Notification within 12 hours

        10.3.1.1.  Within 12 hours of discovery (by phone + email to State security/privacy contact and Director).

    10.3.2.  Preliminary Report within 24 hours

        10.3.2.1.  Description of incident and timeline

        10.3.2.2.  Data elements affected (specific fields and estimated number of records)

        10.3.2.3.  Estimated number of individuals affected

        10.3.2.4.  Preliminary assessment of whether unencrypted sensitive data may have been exposed

        10.3.2.5.  Preliminary remedial actions taken

        10.3.2.6.  Root cause analysis plan and timeline

## APPENDIX A - SOURCES

- Privacy Impact Assessment: https://www.usda.gov/sites/default/files/documents/fns-snap-information-database-pia.pdf

- SORN: https://www.federalregister.gov/documents/2025/06/23/2025-11463/privacy-act-of-1974-system-of-records

- SNAP Act: https://www.law.cornell.edu/uscode/text/7/2020

- SNAP QC Handbook

- Executive Order 14243 (March 20, 2025) "Stopping Waste, Fraud, and Abuse by Eliminating Information Silos: https://www.govinfo.gov/content/pkg/DCPD-202500382/pdf/DCPD-202500382.pdf

Office of the Under Secretary for Food, Nutrition, and Consumer Services
1400 Independence Avenue, SW, Washington, DC 20250-9600
USDA is an Equal Opportunity Provider, Employer, and Lender

Ex. 9-013