# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA
### HARRISBURG DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br><br>　　　　　　**Plaintiff,**<br><br>　v.<br><br>**PENNSYLVANIA DEPARTMENT OF HUMAN SERVICES;** and **VALERIE A. ARKOOSH** in her Official Capacity as Secretary of the Pennsylvania Department of Human Services,<br><br>　　**Defendants.** | **Case No. 1:26-cv-01787-JPW**<br><br>**MEMORANDUM IN SUPPORT OF PRELIMINARY INJUNCTION MOTION** |

# Table of Contents

INTRODUCTION ..................................................................................................1

STATUTORY FRAMEWORK.............................................................................1

FACTUAL BACKGROUND.................................................................................4

    A.   USDA requested records from Defendants in accordance with federal law...4

    B.   Responses and other evidence reveal potential widespread waste, fraud, and abuse. .........................................................................................................5

    C.   Another federal district court has affirmed USDA's authority to request records.....................................................................................................7

    D.   Non-Compliant States rejected USDA's Second Records Request. .............10

    E.   Defendants rejected USDA's Third Records Request. .................................12

ARGUMENT .......................................................................................................13

    F.   Plaintiff is likely to succeed on the merits.....................................................14

        1)   The Ordinary Meaning Canon .................................................................14

        2)   The Presumption Against Ineffectiveness and the Surplusage Canon ......17

        3)   The Legislative History.........................................................................19

    G.   Defendants' ongoing violation of Section 2020(a)(3) irreparably harms the United States....................................................................................................20

    H.   The balance of equities and public interest favor preliminary injunctive relief.................................................................................................................22

CONCLUSION....................................................................................................23

## **Table of Authorities**

**Cases**

*Becerra v. Empire Health Found.*,
  597 U.S. 424 (2022) ...................................................................................................16

*California v. USDA*,
  821 F. Supp. 3d 1015 (N.D. Cal. Feb. 26, 2026) ..............................................9, 10

*California v. USDA*,
  No. 25-cv-06310-MMC, 2025 WL 2939227, (N.D. Cal. Oct. 15, 2025) ..........8, 9

*Garland v. Cargill*,
  602 U.S. 406 (2024) ............................................................................... 17, 18

*In re Hill*,
  81 F.4th 560 (6th Cir. 2023)......................................................................16

*Jimenez v. Quarterman*,
  555 U.S. 113 (2009) ...................................................................................14

*Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*,
  523 U.S. 26 (1998) .....................................................................................15

*Maryland v. King*,
  567 U.S. 1301, 133 S. Ct. 1, 2, 183 L. Ed. 2d 667 (2012) ....................................20

*Milner v. Dep't of Navy*,
  562 U.S. 562 (2011) ...................................................................................19

*New York State Dept. of Social Servs. v. Dublino*,
  413 U.S. 405 (1973) ............................................................................... 18, 19

*Nken v. Holder*,
  556 U.S. 418 (2009) ...................................................................................22

*Reilly v. City of Harrisburg*,
  858 F.3d 173, 179 (3d Cir. 2017).......................................................................14

*Roberts v. Sea-Land Servs., Inc.*,
  566 U.S. 93 (2012) ............................................................................... 18, 19

*Smith v. U.S.*,
  508 U.S. 223 (1993) ...................................................................................15

*Somerville Pub. Sch. v. McMahon*,
  139 F.4th 63 (1st Cir. 2025) ............................................................................ 20, 21

*Starbucks Corp. v. McKinney*,
  602 U.S. 339 (2024) ...................................................................................14

*Tennessee v. Dep't of Educ.*,
  615 F. Supp. 3d 807, 841 (E.D. Tenn. Jul. 15, 2022) .............................22

*Trump v. CASA, Inc.*,
  606 U.S. 831 (2025) ...................................................................................21

*TRW Inc. v. Andrews*,
  534 U.S. 19 (2001) .....................................................................................18

*TVA v. Hill*,
  437 U.S. 153, 194-95 (1978)................................................................. 13, 14

*U.S. v. Ezeta*,
  752 F.3d 1182 (9th Cir. 2014).................................................................15

*United States v. Alabama*,
  691 F.3d 1269 (11th Cir. 2012)............................................................. 20, 21, 22

*United States v. Mackby*,
  339 F.3d 1013 (9th Cir. 2003).................................................................21

*Univ. of Tex. v. Camenisch*,
  451 U.S. 390 (1981) ...................................................................................14

*Winter v. Nat. Res. Def. Council, Inc.*,
  555 U.S. 7, 20 (2008) ............................................................................. 13, 22

*Wis. Cent. Ltd. v. U.S.*,
  585 U.S. 274 (2018) ............................................................................. 14, 15

## Statutes

Agriculture Improvement Act of 2018. Pub. L. No. 115-334, 132 Stat. 4490 (2018)19

7 U.S.C. §

  2012(s)......................................................................................................1, 2

  2013(a) .........................................................................................................2

  2013(b) .........................................................................................................2

  2013(c) .........................................................................................................2

  2014(b) .........................................................................................................1

  2016a(b) .......................................................................................................2

iii

2016(e) ..........................................................................................................2

2020 ...................................................................................................... passim

2020(a) .........................................................................................................2

2020(a)(3)............................................................................................. passim

2020(a)(3)(B)(i)................................................................................... passim

2020(d) .........................................................................................................2

2020(e)(6)(A) ...............................................................................................2

2020(e)(8)........................................................................................ 3, 5, 10, 11

2020(e)(8)(A) ........................................................................................ passim

2020(e)(8)(A)(i) .........................................................................................10

2020(g) ............................................................................................... passim

2020(h) .........................................................................................................2

2022 ...............................................................................................................1

2022(b)(5) .....................................................................................................2

2022(b)(5)(B)(iii) ........................................................................................2

2023 ...............................................................................................................1

2024 ...............................................................................................................1

2025 ..........................................................................................................1, 14

2025(c) ..........................................................................................................2

2025(c)(1)(C) ............................................................................................6, 7

## Other Authorities

90 Fed. Reg. 13, 681 (Mar. 20, 2025). .....................................................4, 5

90 Fed. Reg. 26521-22 (June 23, 2025). .......................................................5

91 Fed. Reg. 35948–49 (June 15, 2026)........................................................5

H.R. Rep. No. 115-1072, at 626 (2018) (Conf. Rep.) ...........................19, 20

Merriam-Webster.com (last visited Jul. 10, 2026), https://www.merriam-
    webster.com/dictionary/subject%20. ................................................. 15

Merriam-Webster.com (last visited Jul. 10, 2026), https://www.merriam-webster.com/dictionary/protocols. .......................................................................15

## INTRODUCTION

The Pennsylvania Department of Human Services and its Secretary, Valerie A. Arkoosh, ("Defendants") have refused to comply with the U.S. Department of Agriculture's ("USDA") lawful records request under the Food and Nutrition Act of 2008 ("FNA") for Supplemental Nutrition Assistance Program ("SNAP") compliance records. Despite repeated requests, negotiations, and guidance from the U.S. District Court for the Northern District of California affirming USDA's right to obtain the records, Defendants refuse to produce them. Defendants' refusal not only violates their statutory obligation but prevents USDA from performing oversight Congress deemed essential to administering a program costing taxpayers nearly $100 billion annually. The United States of America ("Plaintiff") requests that this Court enter a preliminary injunction compelling Defendants to produce records Congress mandated "shall . . . be made available for inspection and audit." 7 U.S.C. § 2020(a)(3), (g).

## STATUTORY FRAMEWORK

Under the FNA, USDA is primarily responsible for implementation, program integrity, and state oversight while states are primarily responsible for day-to-day operations. *Id.* §§ 2012(s), 2014(b), 2020, 2022–25; 7 C.F.R. § 271.4. States certify eligibility, calculate benefit amounts, issue benefits through Electronic Benefit Transfer ("EBT") cards, and maintain records sufficient for USDA oversight.

1

7 U.S.C. § 2020; 7 C.F.R. § 271.4. States may delegate these functions to designated state agencies, which may contract with third-party processors to facilitate EBT payments to eligible households. *See* 7 U.S.C. §§ 2012(s), 2016, 2020(e); 7 C.F.R. §§ 271.4, 272.2, 273.

The FNA makes USDA the primary administrator and overseer of SNAP, granting it broad authority to implement, administer, and oversee the program. *See, e.g., id.* §§ 2013(a)–(c), 2016(e), 2016a(b), 2020(a), 2020(d), 2020(e)(6)(A), 2020(h), 2020(g), 2022(b)(5), 2022(b)(5)(B)(iii), 2025(c). These provisions make clear USDA oversees SNAP's program integrity, including supervising the state agencies responsible for administering benefits.

Recognizing that access to relevant program information is essential to USDA's oversight responsibilities, Congress expressly granted USDA authority to make broad requests for records from state agencies. This authority is codified in Section 2020(a)(3):

> (a) State Responsibility
>> (3) Records
>>> (A) In general
>>> Each State agency shall keep such records as may be necessary to determine whether the program is being conducted in compliance with this chapter (including regulations issued under this chapter).
>>> (B) Inspection and audit
>>> All records, and the entire information systems in which records are contained, that are covered in subparagraph (A) shall—

> (i) be made available for inspection and audit by the Secretary, subject to data and security protocols agreed to by the State agency and Secretary; . . . (iii) be preserved for such period of not less than 3 years as may be specified in regulations.

7 U.S.C. § 2020(a)(3).

Each state must administer SNAP according to a USDA-approved plan of operation that includes safeguards that generally "prohibit the use or disclosure of information obtained from applicant households" subject to certain carveouts. 7 U.S.C. § 2020(e)(8). One carveout permits the disclosure of certain SNAP records to USDA so that USDA can administer SNAP and enforce the FNA, subject to certain use and redisclosure limitations. *Id.* Specifically, Section 2020(e)(8)(A) provides that a state agency's plan of operation shall include:

> (8) safeguards which prohibit the use or disclosure of information obtained from applicant households, except that—
> (A) the safeguards shall permit—
> (i) the disclosure of such information to persons directly connected with the administration or enforcement of the provisions of this chapter, regulations issued pursuant to this chapter, Federal assistance programs, or federally-assisted State programs; and
> (ii) the subsequent use of the information by persons described in clause (i) only for such administration or enforcement[.]

7 U.S.C. § 2020(e)(8)(A).

Read together, Section 2020(a)(3) requires state agencies to provide records to USDA for inspection and audit, and Section 2020(e)(8)(A) ensures that state

agencies' plans of operation include a vehicle for them to comply with USDA's requests, so long as the requests are limited to information used to administer and enforce the FNA. *See id*. § 2020(a)(3), (e)(8)(A).

A state agency violates the FNA when it relies on an unreasonable rejection of USDA's proposed data and security protocols as a basis for refusing to comply with a Section 2020(a)(3) records request. *See id.* § 2020(a)(3), 2020(g). If USDA determines the violation is "without good cause," USDA must "immediately inform such State agency of such failure" and "allow the State agency a specified period of time for the correction of such failure." *Id.* § 2020(g). If the state agency does not correct the failure within the specified time, USDA "may" refer the matter to the Attorney General "with a request that injunctive relief be sought to require compliance *forthwith* by the State agency[.]" *Id.* (emphasis added).

## FACTUAL BACKGROUND

**A.    USDA requested records from Defendants in accordance with federal law.**

On March 20, 2025, President Trump issued Executive Order 14,243 that directed agency heads to ensure they have access to comprehensive data from federally funded state programs, including SNAP, and, where appropriate, data "maintained in third-party databases." *See* Stopping Waste, Fraud, and Abuse by

4

Eliminating Information Silos, Exec. Order No. 14,243 § 3(a), (c), 90 Fed. Reg. 13,681 (Mar. 20, 2025) ("EO 14,243").

On May 6, 2025, USDA, pursuant to the FNA and EO 14,243, sent a letter ("First Records Request") to Defendants and the SNAP agencies for each of the remaining fifty states and District of Columbia (collectively, "State Agencies") under Section 2020(a)(3) and 2020(e)(8)(A). Decl. of Sheila Corley ¶ 5, ECF No. 1-2 (hereinafter "Corley Decl."); ECF No. 1-3. The letter asked Defendants to produce certain SNAP compliance records from the preceding five years so that USDA could consolidate and review them in a centralized USDA-managed database. ECF No. 1-3 at 2–3.

On June 23, 2025, USDA published a System of Records Notice ("SORN") establishing the National Supplemental Nutrition Assistance Program (SNAP) Information Database (the "Database"). 90 FR 26521–22 (June 23, 2025). The SORN identified information that USDA intended to collect from State Agencies to reposit in the Database, including records necessary to evaluate SNAP eligibility, participation, benefit payments, and EBT transactions. *Id.* at 26,522. USDA later revised the SORN to clarify the Database's privacy and security safeguards, including that records remain subject to the Privacy Act, the FNA, and specifically FNA Section 2020(e)(8)'s restrictions on use and redisclosure. 91 FR 35948–49 (June 15, 2026).

**B.    Responses and other evidence reveal potential widespread waste, fraud, and abuse.**

Twenty-nine State Agencies complied with USDA's First Records Request and provided five years of SNAP records covering household eligibility, benefit allotments, and EBT transactions. Corley Decl. ¶ 40. USDA preliminarily estimated that over one million apparently ineligible recipients were certified for SNAP benefits in July 2025, based on red flags, including deceased recipients, duplicate allotments, dummy Social Security numbers, and previously disqualified recipients. Corley Decl. ¶¶ 43–44. USDA estimated potential annual overpayments by assuming State Agencies would continue paying those benefits over a typical twelve-month certification period. *Id.* Thus, USDA concluded that compliant State Agencies may be issuing up to $3 billion in SNAP overpayments annually. *Id.*

USDA cannot complete its analysis of these payment errors and other systemic issues, until it reviews the records requested from all State Agencies. *Id.* ¶ 42. For example, USDA cannot determine the extent of potential duplicate benefit payments across State Agencies without complete records from every jurisdiction. *Id.*

Defendants' SNAP administration has followed the national trend and produced excessive overpayments in recent years. *Id.* ¶¶ 46–49, 57. In fiscal year ("FY") 2023, USDA assessed a liability amount of $39,503,295 against Defendants

because their payment error rate exceeded the national payment error rate for two consecutive years with statistical confidence. *Id.* ¶ 57; *see* 7 U.S.C. 2025(c)(1)(C).

Defendants' SNAP overpayment error rates have exceeded the standard tolerance level of 6 percent between FY 2022 through 2025:

| Fiscal Year | Overpayment Rates | Payment Error Rates |
|---|---|---|
| 2025 | 8.03 | 9.21 |
| 2024 | 9.49 | 10.76 |
| 2023 | 15.03 | 16.61 |
| 2022 | 12.54 | 14.44 |

Corley Decl. ¶ 58. Thus, Defendants have been statutorily required to participate in corrective action plans under the supervision of USDA. *Id.* ¶ 57.

As Defendants paid out about $4.27 billion in federally funded SNAP benefits in FY 2024, their overpayment error rate produced over $405 million in improper payments in that year alone—all due to waste and abuse. *Id.* ¶ 59. This is evidence that Defendants failed to enforce SNAP by failing to identify and eliminate root causes of errors, which USDA will identify and address through the Database. *Id.*

**C.    Another federal district court has affirmed USDA's authority to request records.**

Twenty-two State Agencies, including Defendants, failed to provide records in response to USDA's First Records Request. *Id.* ¶ 40. In a July 25th follow-up letter, USDA warned that failure to provide the requested data "may trigger

noncompliance procedures codified [in] 7 U.S.C. § 2020(g)." Corley Decl. ¶ 8; ECF No. 1-6 at 2.

On July 28, 2025, the attorneys general or governors for twenty states and the District of Columbia ("Non-Compliant States") filed suit against USDA, its Secretary, and its Office of Inspector General in the Northern District of California ("California Court"). *See* Compl., *California v. U.S. Dep't of Agric.*, No. 3:25-cv-06310-MMC (N.D. Cal. July 28, 2025), ECF No. 1. Their complaint alleged that USDA would share the records with federal immigration authorities and principally claimed that USDA's request violated the Administrative Procedure Act ("APA"). *See id.* ¶¶ 125, 295–344. Among other relief, they sought injunctions barring USDA from pursuing its request or initiating noncompliance procedures. *Id.* at 77–78. In September 2025, the Office of the Pennsylvania Governor joined the Non-Compliant States' lawsuit through an amended complaint. *See* Amended Compl. ¶¶ 25–27, *California v. U.S. Dep't of Agric.*, No. 3:25-cv-06310-MMC (N.D. Cal. Sept. 22, 2025), ECF No. 84.

On October 15, 2025, the California Court narrowly granted the Non-Compliant States' motion for a preliminary injunction as to USDA's disallowance of administrative funds. *California v. USDA*, No. 25-cv-06310-MMC, 2025 WL 2939227 at *4, 7–12, 14, (N.D. Cal. Oct. 15, 2025). While rejecting most of the Non-Compliant States' arguments, the California Court observed that USDA's request

8

did not comply with Section 2020(a)(3) because the parties never negotiated required data and security protocols and USDA could not rely on Section 2020(e)(8)(A) as an independent authority to obtain the records. *Id.* at 7–12. Even so, the California Court acknowledged that Section 2020(a)(3) entitles USDA to obtain records necessary to determine compliance with the FNA subject to agreed upon data and security protocols. *Id.* at 8 (finding that Section 2020(a)(3) uses "clear, mandatory language," requiring that records "shall . . . be made available for inspection and audit.").

On November 24, 2025, USDA sent a letter to Non-Compliant States ("Second Records Request") requesting the records under 7 U.S.C. § 2020(a)(3), along with data elements and proposed data and security protocols. Corley Decl. ¶ 11; ECF No. 1-9 at 2, 5–7, 8–12. In February 2026, the California Court expanded the injunction, barring USDA from disallowing federal funds based on Non-Compliant States' refusal to comply with this request. *California v. USDA*, 821 F. Supp. 3d 1015 (N.D. Cal. Feb. 26, 2026). The California Court ruled that, "a State is not entitled to unreasonably decline to agree to a protocol" when USDA seeks records under Section 2020(a)(3). *Id.* at 1029. However, the California Court reasoned that Section 2020(a)(3) and Section 2020(e)(8)(A) must be read together, meaning USDA's request for records and proposed protocols under Section 2020(a)(3) cannot force a State Agency to violate Section 2020(e)(8)(A)'s use and

redisclosure restrictions. *Id.* at 1030–31. The California Court found that two sections of USDA's then-proposed protocols and the June 2025 SORN would have allowed "USDA to share the requested data with entities other than those covered by § 2020(e)(8)(A)(i), thereby effectively serving as a conduit between [Non-Compliant States] and prohibited entities." *Id.* at 1031.

During the injunction hearing, the California Court observed that USDA could amend its protocols to make them comply with Section 2020(e)(8)(A) by (1) copying verbatim that subsection's use-and-redisclosure limitations; and (2) expressly limiting any conflicting routine use in the SORN. *See* Tr. of Proceedings, *California v. U.S. Dep't of Agric.*, 3:25-cv-06310-MMC, (N.D. Cal. Feb. 13, 2026), ECF No. 131 at 32:16 to 33:12, 46:10–48:22, 89:8–89:18. Non-Compliant States agreed these amendments would "largely address" their concerns about USDA's use and redisclosure of the records under Section 2020(e)(8)—the only claim that the California Court had found meritorious. *Id.* at 47:9–47:21.

**D.    Non-Compliant States rejected USDA's Second Records Request.**

On February 17, 2026, USDA sent Non-Compliant States a letter with amended data and security protocols incorporating the California Court's guidance ("Second Records Request"). Corley Decl. ¶ 14; ECF No. 1-12 at 2. On February 25, 2026, Non-Compliant States rejected this request on numerous grounds, including some previously rejected by the California Court. ECF No. 1-13 at 2–3,

17–23. Now dissatisfied with Section 2020(e)(8)(A)'s restrictions, Non-Compliant States proposed adding new language "to make clear that 7 U.S.C. § 2020(e)(8) does not permit the use or disclosure of data for purposes of investigating potential violations of civil immigration laws or enforcing civil immigration laws." *Id.* at 2–3. Non-Compliant States also proposed subjecting USDA employees to state criminal penalties for protocol violations and limiting key data elements necessary for USDA to audit eligibility and benefit payments. *Id.* at 17, 28–32.

Over the ensuing weeks, USDA attempted to negotiate revisions to the protocols in good faith with Non-Compliant States, accepting some proposed revisions while rejecting others that unlawfully restricted USDA from performing its statutory duties. Corley Decl. ¶¶ 16–19; ECF No. 1-14–1-17. In a March 27th letter, USDA addressed the Non-Compliant States' immigration-enforcement concerns by revising the protocols to state: "Section 2020(e)(8)(A) does not provide USDA with authority to respond to a request from DHS for data for purpose(s) of civil immigration enforcement." ECF No. 1-17 at 3, 9.

On March 30, 2026, Non-Compliant States rejected USDA's records request and proposed protocols. Corley Decl. ¶ 20; ECF No. 1-18. Non-Compliant States asserted other federal laws could permit USDA to share the records despite the protocols' restrictions and claimed USDA failed to justify its need for certain data elements. ECF No. 1-18 at 2–3.

11

**E.      Defendants rejected USDA's Third Records Request.**

On May 15, 2026, USDA sent a letter to Defendants under 7 U.S.C. § 2020(a)(3), superseding its prior records requests ("Third Records Request"). Corley Decl. ¶ 21; ECF No. 1-19. The letter again included a list of defined data elements and data and security protocols that incorporated the California Court's guidance and affirmed Section 2020(e)(8)(A) does not provide USDA with authority to respond to a request from DHS for records for purposes of civil immigration enforcement. ECF No. 1-19.

On May 22, 2026, Non-Compliant States—not Defendants—sent USDA a letter refusing to provide the requested records or agree to USDA's proposed data and security protocols. Corley Decl. ¶ 22; ECF No. 1-20 at 2. Instead, Non-Compliant States stated they would await resolution of their APA lawsuit. ECF No. 1-20 at 2. They proposed no revisions to USDA's protocols and maintained their previously asserted objections. *Id.* As of the date of this filing, Defendants have not independently responded to USDA's Third Records Request, other than to acknowledge receipt. *See* Corley Decl. ¶ 23.

Pursuant to 7 U.S.C. § 2020(g), the Secretary of Agriculture formally requested that the Attorney General seek injunctive relief compelling Defendants to comply with the FNA and its regulations, including USDA's records request under 7 U.S.C. § 2020(a)(3). *Id.* ¶ 24.

12

## ARGUMENT

Plaintiff seeks a preliminary injunction ordering Defendants to produce the requested records in compliance with USDA's Third Records Request. Section 2020(g) authorizes the Attorney General to bring an action to compel a State Agency's compliance with the FNA and its regulations. Upon a showing of noncompliance, the statute requires the district court with jurisdiction over the State Agency to issue "appropriate injunctive relief" and order "forthwith" compliance. 7 U.S.C. § 2020(g).

Courts consider four factors in deciding whether to grant a preliminary injunction: whether the movant is likely to (1) "succeed on the merits" (2) and "suffer irreparable harm in the absence of preliminary relief," and whether (3) the "balance of equities tips in [the movant's] favor," and (4) the "injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). If the movant satisfies the first two factors, "a court then considers the remaining two factors and determines in its sound discretion if all four factors, taken together, balance in favor of granting the requested preliminary relief." *Reilly v. City of Harrisburg*, 858 F.3d 173, 179 (3d Cir. 2017), as amended (June 26, 2017). In exercising equitable discretion, courts give effect to Congress's policy choices, which here direct USDA to oversee State Agencies' administration of SNAP. *See* 7

13

U.S.C. § 2020; *TVA v. Hill*, 437 U.S. 153, 194–95 (1978). The equitable factors support the requested injunction.

**F.      Plaintiff is likely to succeed on the merits.**

The first equitable factor requires the movant to make a "clear showing that [it] is likely to succeed on the merits." *Starbucks Corp. v. McKinney*, 602 U.S. 339, 345 (2024) (cleaned up). The movant need not fully prove its case at this stage. *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981). Plaintiff satisfies this standard.

The FNA grants USDA broad authority to oversee State Agencies' administration of SNAP. 7 U.S.C. §§ 2020, 2025. To facilitate that oversight, the FNA requires State Agencies to afford USDA access to all their records subject to agreed upon data and security protocols. 7 U.S.C. § 2020(a)(3). Defendants refused to provide the requested records and rejected USDA's proposed protocols. Corley Decl. ¶¶ 20, 22; ECF Nos. 1-18, 1-20 at 2. The dispositive question is whether Defendants may defeat USDA's statutory right of access by withholding agreement to reasonable protocols. *See* 7 U.S.C. § 2020(a)(3). They cannot.

1)      The Ordinary Meaning Canon

Any question of statutory interpretation begins with the "plain language of the statute." *Jimenez v. Quarterman*, 555 U.S. 113, 118 (2009). When the language is plain, courts "must enforce it according to its terms." *Id.* Courts must give undefined terms their "ordinary meaning . . . at the time Congress enacted the statute." *Wis.*

14

*Cent. Ltd. v. U.S.*, 585 U.S. 274, 277 (2018) (cleaned up). In doing so, courts should apply "standard English language dictionaries." *U.S. v. Ezeta*, 752 F.3d 1182, 1185 (9th Cir. 2014) (citing *Smith v. U.S.*, 508 U.S. 223, 228–29 (1993)).

Section 2020(a)(3) provides that records maintained by State Agencies "*shall be* made available" for USDA's "inspection and audit . . . *subject to* data and security *protocols* agreed to by the State agency and Secretary." 7 U.S.C. § 2020(a)(3)(B)(i) (emphasis added). Because the term "shall" denotes a mandatory obligation rather than discretion, Section 2020(a)(3)'s ordinary meaning obligates Defendants to provide the Secretary access to those records for inspection and audit. *See Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26, 35 (1998) (finding that the term "shall . . . normally creates an obligation impervious to judicial discretion.").

The phrase "subject to data and security protocols" does not alter Defendants' obligation. *See* 7 U.S.C. § 2020(a)(3)(B)(i). The ordinary meaning of this phrase is that the manner and terms of data sharing are governed by, or controlled through, agreed upon protocols. *See* "Subject to", Merriam-Webster.com (last visited Jul. 10, 2026), https://www.merriam-webster.com/dictionary/subject%20to ("affected by or possibly affected by (something)"). Likewise, the ordinary meaning of "protocols" is that it refers to procedures, safeguards, and rules governing the implementation of an activity. *See* "Protocols", Merriam-Webster.com (last visited Jul. 10, 2026),

15

https://www.merriam-webster.com/dictionary/protocols (including "a system of rules that explain the correct conduct and procedures to be followed in formal situations;" and "a set of conventions governing the treatment and especially the formatting of data in an electronic communications system").

Read together, the terms "*shall*," "*subject to*," and "*protocols*" establish first, a mandatory duty of access for USDA, and second, that such access is governed by data and security protocols mutually agreed upon by State Agencies and USDA. *See* 7 U.S.C. § 2020(a)(3)(B)(i). The term "*subject to*" incorporates those safeguards as constraints on implementation, while "*protocols*" identifies the mechanisms that structure disclosure. *See id.* Nothing in these terms suggests that agreement on protocols is a condition precedent to the State's underlying obligation to permit inspection and audit. *See id.* Rather, the protocol clause regulates the manner of access but does not eliminate the obligation to provide access. *See id.*

The structure of Section 2020(a)(3) further supports this interpretation. *See Becerra v. Empire Health Found.*, 597 U.S. 424, 442 (2022) (looking to the "structure of the relevant statutory provisions" to determine statutory meaning). Section 2020(a)(3) first imposes the obligation that records "*shall . . .* be made available" to USDA. *See* 7 U.S.C. § 2020(a)(3)(B)(i) (emphasis added); *In re Hill*, 81 F.4th 560, 573 (6th Cir. 2023) (Thapar, J., concurring) ("And here, the text is clear. 'Shall' means 'shall.'"). Only after imposing that obligation does the statute

16

qualify the manner of access by providing that inspection and audit are "subject to data and security protocols agreed to by the State agency and [USDA Secretary]." 7 U.S.C. § 2020(a)(3)(B)(i). Nothing in this language suggests that the parties' failure to agree on the mechanics of access extinguishes the USDA Secretary's underlying right to inspect and audit the records. *See id*.

Moreover, Section 2020(a)(3)'s performance is simply the transfer and storage of the records and not subsequent use, redisclosure, or anything else. *See id.* Indeed, Congress considered restrictions on USDA's use and redisclosure of the records after Section 2020(a)(3)'s transfer and storage occurs and provided those restrictions in a separate subsection—(e)(8)(A). Thus, Defendants cannot lawfully withhold performance under Section 2020(a)(3) by requiring protocols that impose greater restrictions than those in Section 2020(e)(8)(A).

2)      The Presumption Against Ineffectiveness and the Surplusage Canon

The presumption against ineffectiveness and surplusage canon further confirm Defendants may not refuse to agree to reasonable data and security protocols. The presumption against ineffectiveness "weighs against interpretations of a statute that would render the law in a great measure nugatory, and enable offenders to elude its provisions in the most easy manner." *Garland v. Cargill*, 602 U.S. 406, 427 (2024) (cleaned up). The presumption gives effect to the

17

"commonsense proposition that Congress presumably does not enact useless laws." *Id.* (cleaned up).

Likewise, courts presume that Congress does not enact language that is "superfluous, void, or insignificant." *TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001) (cleaned up). Statutory provisions must therefore be interpreted "in their context and with a view to their place in the overall statutory scheme." *Roberts v. Sea-Land Servs., Inc.*, 566 U.S. 93, 101 (2012); *New York State Dept. of Social Servs. v. Dublino*, 413 U.S. 405, 419–20 (1973) ("We cannot interpret federal statutes to negate their own stated purposes.").

Using these tools, the qualifier, "subject to data and security protocols agreed to by the State agency and Secretary" cannot reasonably be construed to grant Defendants a unilateral veto over the Secretary's inspection authority. *See* 7 U.S.C. § 2020(a)(3)(B)(i). Otherwise, Congress's command that State Agency records "shall be made available for inspection and audit" would be rendered "useless" and "nugatory" as State Agencies could defeat federal oversight simply by refusing to agree to a protocol (as Defendants attempt to do here). *See id.*; *Garland*, 602 U.S. at 427.

Furthermore, construing the protocol language as a condition on whether disclosure occurs would improperly elevate the qualifier "subject to data and security protocols agreed to by the State agency and Secretary" over Congress's

18

command that covered records shall "be made available for inspection and audit." *See* 7 U.S.C. § 2020(a)(3)(B)(i). The surplusage canon gives effect to both provisions: the inspection requirement establishes the State Agency's obligation to provide USDA access to covered records, while the protocol requirement governs the procedures for providing that access. *See Roberts*, 566 U.S. at 101; *Dublino*, 413 U.S. at 419–20. This reading preserves independent meaning for both provisions, avoids surplusage, and effectuates Congress's purpose of ensuring USDA can "inspect[] and audit" covered records. 7 U.S.C. § 2020(a)(3)(B)(i).

### 3)    The Legislative History

Section 2020(a)(3)(B)(i)'s legislative history confirms Congress intended to expand USDA's access to State Agencies' SNAP records, not make access contingent on its unilateral consent. *See Milner v. Dep't of Navy*, 562 U.S. 562, 574 (2011) ("Legislative history, for those who take it into account, is meant to clear up ambiguity, not create it.").

Congress enacted Section 2020(a)(3)(B)(i) as part of the Agriculture Improvement Act of 2018. Pub. L. No. 115-334, 132 Stat. 4490 (2018). The House and Senate conference committee managers cited "oversight and administration problems" in SNAP quality control that caused a "multi-year gap in publication of SNAP error rates." H.R. Rep. No. 115-1072, at 626 (2018) (Conf. Rep.). To remedy those problems, the managers sought "to reinforce . . . efforts to obtain statistically-

19

valid data" and expected "States to cooperate in the [quality control] process by making data available to [USDA] when requested." *Id*. They emphasized "USDA needs sufficient access, in accordance with agreements with States, to State systems and records" and directed USDA "to access records and information systems" held by the states to improve program integrity and reduce errors and fraud. *Id*. Congress thus intended to facilitate USDA's access to state records, not permit State Agencies to unilaterally veto such access. *See id*.

**G.      Defendants' ongoing violation of Section 2020(a)(3) irreparably harms the United States.**

Defendants' ongoing violation of Section 2020(a)(3) irreparably harms the United States by interfering with its interest in administering federal law and overseeing SNAP. The "government's inability to effectuat[e] statutes enacted by representatives of [the] people . . . gives rise to irreparable harm." *Somerville Pub. Sch. v. McMahon*, 139 F.4th 63, 74 (1st Cir. 2025) (citing *Maryland v. King*, 567 U.S. 1301, 1303) (Roberts, C.J., in chambers)) (cleaned up).

Courts recognize that the United States suffers irreparable injury when state action undermines federal authority or prevents the federal government from carrying out its statutory responsibilities. *See, e.g., United States v. Alabama*, 691 F.3d 1269, 1301 (11th Cir. 2012) ("The United States suffers injury when its valid laws in a domain of federal authority are undermined by impermissible state

20

regulation."). The Supreme Court similarly recognizes that improper intrusion into the federal government's prerogatives is impermissible. *Cf. Trump v. CASA, Inc.*, 606 U.S. 831, 859 (2025) ("When a federal court enters a universal injunction against the Government, it improperly intrudes on a coordinate branch of the Government and prevents the Government from enforcing its policies against nonparties.") (cleaned up).

Here, Congress charged USDA with overseeing SNAP and expressly authorized USDA to obtain necessary records to perform that oversight. *See* 7 U.S.C. § 2020. Defendants' refusal to provide those records subverts Congress's chosen system of accountability and prevents USDA from carrying out its statutory duties. *See McMahon*, 139 F.4th at 74. The resulting harm threatens the integrity of SNAP itself. *See United States v. Mackby*, 339 F.3d 1013, 1018 (9th Cir. 2003) ("[Defendant's] false claims also harmed the government, in the form of both monetary damages and *harm to the administration and integrity* of Medicare") (emphasis added). By withholding records required under Section 2020(a)(3), Defendants have thwarted Congress's oversight scheme and have impaired the federal government's sovereign interest in administering federal law and safeguarding the integrity of SNAP. *See McMahon*, 139 F.4th at 74. Accordingly, Defendants' refusal to comply with Section 2020(a)(3) constitutes precisely the type

21

of interference with federal authority that gives rise to irreparable harm. *See Alabama*, 691 F.3d at 1301.

**H.     The balance of equities and public interest favor preliminary injunctive relief.**

The final two preliminary injunction factors are the balance of equities and the public interest. *Winter*, 555 U.S. at 20. Since Defendants are government officials, the balance-of-equities and public interest factors merge. *See Nken v. Holder*, 556 U.S. 418, 435 (2009).

The balance of equities and public interest favor Plaintiff, which has strong interests in administering SNAP according to Congress's directives and protecting its systemic integrity. *See Tennessee v. Dep't of Educ.*, 615 F. Supp. 3d 807, 841 (E.D. Tenn. Jul. 15, 2022) ("[T]he public's true interest lies in the correct application of the law.") (cleaned up), *aff'd.*, 104 F.4th 577 (6th Cir. 2024). By contrast, the public interest is not served by Defendants' frustration of federal statutes and prerogatives, and Defendants suffer no cognizable harm from an injunction requiring them to produce records they are statutorily required to collect, have collected, and are obligated to provide to USDA. *See* 7 U.S.C. 2020(a)(3); *Alabama*, 691 F.3d at 1301.

An injunction also poses little risk to program recipients because USDA's proposed protocols include safeguards protecting their personal information. Corley

Decl. ¶ 21; ECF No. 19 at 8, 10, 18–19 ("USDA is offering the strictest level of security available—FedRAMP High" for "data security and protections both in storage and transfer"). Moreover, Congress has already decided the public interest is best served by providing USDA access to the records necessary to oversee the administration and integrity of SNAP. *See* 7 U.S.C. § 2020(a)(3)(B)(i); H.R. Rep. No. 115-1072, at 626.

## CONCLUSION

Plaintiff respectfully requests that the Court order Defendants to comply with USDA's records request forthwith.

Dated: July 15, 2026

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

TYLER BECKER
Counsel to the Assistant Attorney General
Civil Division

LISA K. HSIAO
Acting Director
Enforcement & Affirmative Litigation
Branch

*s/ Cadesby Cooper*
CADESBY B. COOPER
COLIN W. TRUNDLE
KYU YUN KIM

23

DANIEL J. PETROKAS
Trial Attorneys
Enforcement & Affirmative Litigation Branch
450 5th Street, N.W.
Washington, DC 20001
Tel: 202-451-7687
cadesby.b.cooper@usdoj.gov

*Counsel for Plaintiff United States of America*

24